IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROBERTO BENITO MANZANARES, personally and individually; and ROBERT BENITO MANZANARES for and on behalf of K.M., his minor child;,<br><br>    Plaintiffs,<br><br>v.<br><br>CARIE TERRY n/k/a CARIE MORELOCK; SCOTT BYINGTON; JULISA BYINGTON; WOOD CRAPO LLC; WOOD JENKINS LLC; KIRTON & MCCONKIE LLC; LARRY S. JENKINS; DAVID J. HARDY; and JOHN DOES I TO XX;,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br>Case No. 2:14-CV-108 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on a Motion to Dismiss filed by Defendants Kirton McConkie, PC, Larry S. Jenkins, and David J. Hardy, which has been joined by Defendants Carie Terry n/k/a Carie Morelock, Scott Byington, and Julissa Byington.  In addition, Plaintiffs have filed a Motion for Continuance under Federal Rule of Civil Procedure 56(d).  For the reasons discussed below, the Court will deny the Rule 56(d) Motion, dismiss Plaintiff Robert Manzanares's claims with prejudice, and dismiss Plaintiff K.M.'s claims without prejudice.

## I.  BACKGROUND

Plaintiff Robert Manzanares ("Manzanares") is the biological father of Plaintiff K.M.  Defendant Carie Terry n/k/a Carie Morelock ("Morelock") is the biological mother of K.M.  Scott Byington is Morelock's brother and is the husband of Julissa Byington (the "Byingtons").

Plaintiffs allege that the Byingtons are the adoptive parents of K.M., though the exact nature of their current legal relationship to K.M. is unclear from the record before the Court.

Manzanares and Morelock engaged in an intimate relationship, resulting in the conception of K.M. On January 11, 2008, Morelock informed Manzanares that she was planning to go to Utah in February to visit her father. Concerned that Morelock was planning to give birth in Utah, Manzanares filed a paternity action in Colorado state court on January 16, 2008, seeking to enjoin any adoption proceeding. Defendant Morelock was served with the paternity action on February 1, 2008. On February 12, 2008, Morelock filed a response, acknowledging that Manzanares was the father, but denying that she intended to surreptitiously place the child for adoption. A hearing on Manzanares's petition was set for February 20, 2008.

Prior to the hearing, Morelock traveled to Utah on February 14, 2008. Plaintiffs allege that Morelock came to Utah to prevent Manzanares from exercising his paternity rights. On February 16, 2008, the Byingtons signed a petition for the adoption of Morelock's baby in Utah. K.M. was born prematurely in Utah on February 17, 2008. On February 19, 2008, the Byingtons filed an adoption petition in Utah state court.

On February 20, 2008, Morelock called the Colorado court to indicate that she would not be at the hearing because she was out of town. Morelock did not inform the Colorado court that she had given birth or that she would be appearing before a Utah court that same day to give her consent to the adoption of K.M. Later that day, Morelock executed a Consent to Adoption in Utah. Neither Morelock nor the Byingtons informed the Utah state court about the events that were going on in the Colorado court.

On February 25, 2008, Manzanares learned that Morelock had given birth.  On February 26, 2008, Manzanares filed an emergency motion with the Colorado court.  The Colorado court held hearings on February 27, 29, and March 3, 2008.  The Colorado court granted Manzanares's petition for paternity and signed a final order of paternity.  The Colorado court ordered that Manzanares's name be listed on K.M.'s birth certificate.

On March 4, 2008, Manzanares filed a motion to dismiss the Byingtons' adoption petition in Utah state court.  A two-day bench trial was held in July 2008.  The trial court found that Morelock had deceived Manzanares, but did not vacate the adoption.  The Utah Supreme Court reversed and remanded the case in 2012.

Though the allegations against them are less than clear, Plaintiffs appear to allege that Defendants Jenkins and Hardy advised and otherwise assisted Morelock and the Byingtons in relation to the adoption proceedings in Utah.  Specifically, Plaintiffs allege that Defendants Jenkins and Hardy counseled, advised, and provided information to Morelock and the Byingtons concerning Utah's adoption laws and Manzanares's requirements under Utah law.  The attachments to the Complaint show that Jenkins, or others at his former law firm, drafted Morelock's Consent to Adoption and an Order of Temporary Custody, which provided custody of K.M. to the Byingtons.  In addition, another document attached to the Complaint reveals that Jenkins sent a letter to Manzanares's counsel stating that Manzanares had not complied with Utah law and, as a result, lost any right he may have had to K.M.

## II.  RULE 56(d) MOTION

Before addressing the Motion to Dismiss and the joinders therein, the Court must first consider Plaintiffs' Motion under Federal Rule of Civil Procedure 56(d).

Federal Rule of Civil Procedure 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[1]

The party requesting additional discovery must present an affidavit that identifies "the probable facts not available and what steps have been taken to obtain these facts. The nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact."[2]  "The general principle of Rule [56(d)] is that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'"[3]

Rule 56(d) relates to summary judgment proceedings. Defendants have not moved for summary judgment, but instead have moved for dismissal under Rule 12(b)(6). Plaintiffs contend that the Motion to Dismiss is now being considered as a motion for summary judgment because matters outside the pleadings are being considered. This, however, is a false premise.

As set forth below, the Court may consider not only the Complaint but also the exhibits attached to the Complaint, documents incorporated into the Complaint by reference, and matters of which the Court may take judicial notice. Plaintiffs' Complaint attaches a number of documents and incorporates others by reference. Under the framework governing motions to

---

[1] Fed. R. Civ. P. 56(d).

[2] *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006) (brackets, citation, and internal quotation marks omitted).

[3] *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).

Case 2:14-cv-00108-TS   Document 39   Filed 11/12/14   Page 5 of 15

dismiss, the Court may properly consider these documents without converting the Motion into one for summary judgment.

The only other documents that have been provided to the Court, though ultimately they have not been considered for purposes of the Motions to Dismiss, are orders issued by the Colorado court.  Plaintiffs attached these documents to their opposition to the Motion to Dismiss.  Even if these documents had been considered in determining the Motions to Dismiss, these documents are matters of public record of which the Court may take judicial notice.[4]  Consideration of these public records does not convert the Motion to Dismiss into one for summary judgment.[5]  Further, as will be discussed, the Court need not consider any outside materials in reaching its determination that Manzanares's claims are time barred.  The allegation in the Complaint provide an ample basis for dismissal on this ground.  Therefore, Rule 56(d) does not apply and Plaintiffs' request for a continuance must be denied.

The Court would further note that Plaintiffs requested an extension of time to file a reply to their 56(d) Motion.  The Court granted their requested and provided a brief extension.  However, instead of filing a timely reply brief, Plaintiffs filed a document requesting that they be provided additional time to file a reply and requesting the Court hear oral argument on the 56(d) Motion.  Plaintiffs, however, failed to file a motion requesting such relief and, to the extent the Court construes Plaintiffs' request as a motion, it is denied.  For substantially the same reasons set forth above, neither a reply brief nor oral argument would assist the Court in its determination of these issues.

---

[4] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[5] *Id.*

### III.  MOTION TO DISMISS STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[6]  Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[7] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[8]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[9]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[10]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[11]

---

[6] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[10] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[11] *Iqbal*, 556 U.S. at 679 (citations and internal quotation marks omitted).

In considering a motion to dismiss, a district court not only considers the complaint, "but also the attached exhibits,"[12] and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[13]  The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[14]

IV.  DISCUSSION

A.      MANZANARES'S CLAIMS

Plaintiffs brought this action on February 18, 2014, asserting claims for RICO violations; violation of the Utah Pattern of Unlawful Activity Act; misrepresentation/fraud; negligent misrepresentation; theft, conversion, and misappropriation; civil conspiracy; intentional infliction of emotional distress; negligent infliction of emotional distress; wrongful and tortious interference with parental rights; assault, battery, kidnapping, and false imprisonment; and constructive fraud.  Defendants argue that Plaintiffs' claims are barred by the relevant statutes of limitation.  For the reasons discussed below, the Court agrees that all of Manzanares's claims are barred.[15]

---

[12] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[13] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp. 2007)).

[14] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[15] Under Utah law, the statute of limitations on K.M.'s claims has not started to run. Utah Code Ann. § 78B-2-108.  Therefore, this analysis does not apply to her claims.

The longest statute of limitations for any of Plaintiffs' claims is four years.[16]  "As a general matter, 'a statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action.'"[17]  In this case, all of the events necessary to complete the various causes of action occurred in February or March of 2008.  As set forth above, all of Defendants actions, including K.M.'s birth and the various court hearings, occurred in February and March 2008.  All of Plaintiffs' claims are based on the happening of these events.

Despite this, Manzanares argues that he "did not have, or at least did not have a reasonable belief that he had a completed cause of action until the Utah Supreme Court" issued its decision in *In the Matter of the Adoption of Baby B*, in which the court reversed the district court's order terminating Manzanares's parental rights.[18]

---

[16] *Rotella v. Wood*, 528 U.S. 549, 552 (2000) (stating that civil RICO damages claims are subject to a four-year statute of limitations); Utah Code Ann. § 76-10-1605(9) (providing a three-year statute of limitations for claims under the Utah Pattern of Unlawful Activity Act); Utah Code Ann. § 78B-2-305(3) (stating that fraud claims are subject to three-year statute of limitations); *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 842 (Utah 1996) (holding that negligent misrepresentation claims are subject to four-year statute of limitations); *Russell/Packard Dev., Inc. v. Carson*, 78 P.3d 616, 620 (Utah Ct. App. 2003) (holding that claims for civil conspiracy, conversion, and misappropriation are subject to four-year statute of limitations); *Cabaness v. Thomas*, 232 P.3d 486, 496 (Utah 2010) (stating that claims for intentional infliction of emotional distress are subject to four-year statute of limitations); Utah Code Ann. § 78B-2-307(3) (providing for four-year statute of limitations "for relief not otherwise provided for by law"); Utah Code Ann. § 78B-2-302(4) (stating one-year statute of limitations for false imprisonment claims); *DOIT, Inc.*, 926 P.2d at 842 (stating that constructive fraud claims are subject to three-year statute of limitations).

[17] *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 156 P.3d 806, 810 (Utah 2007) (quoting *Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 746 (Utah 2005)).  The parties apply Utah law to all of Plaintiff's claims, even Plaintiffs' RICO claims.  Plaintiffs have not argued that the result would be different under federal law.  Therefore, the Court will also discuss only Utah law.

[18] 308 P.3d 382 (Utah 2012).

This argument is not supportable.  The Utah Supreme Court did not make any factual findings in its decision.  Rather, the court reviewed the findings of the district court.  The district court held its trial in July 2008.[19]  At the conclusion of the trial, the trial court found that Morelock had deceived Manzanares.[20]  As the Utah Supreme Court stated,

> The district court found [Morelock's January 11, 2008] e-mail to be "misleading and that the e-mail in general was intended to create the false impression that she would stave off any decisions about adoption until she returned to Colorado."  In reality, the court found, she intended to visit Utah to make preparations for a return in late March to deliver the child in Utah.[21]

The Utah Supreme Court merely affirmed these findings.  Thus, the facts supporting Plaintiffs' claims were discovered by July 2008 and were indeed presented to the state trial court.

Manzanares appears to argue that the statutes of limitation should be tolled based on Defendants' alleged fraudulent conduct.  Utah law recognizes both a statutory discovery rule—where a statute itself states that "the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake"[22]—and an equitable discovery rule—which applies in either of two situations:

> (1) "where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct," and (2) "where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action."[23]

---

[19] *Id.* at 388.

[20] *Id.*

[21] *Id.* at 386.

[22] Utah Code Ann. § 78B-2-305(3).

[23] *Russell Packard Dev., Inc.*, 108 P.3d at 747 (quoting *Walker Drug Co., Inc. v. La Sal Oil Co.*, 902 P.2d 1229, 1231 (Utah 1995)).

"[B]efore a statute of limitations may be tolled under either situation, the plaintiff must make an initial showing that he did not know nor should have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitations period."[24]

As set forth above, the record reveals that Manzanares became aware of the facts underlying his causes of action by July 2008, at the latest.  While Plaintiffs allege that there was initial concealment or misleading conduct on the part of Defendants, this conduct was quickly discovered by Manzanares and was the subject of Utah state trial court proceedings.  These proceedings occurred in July 2008.  Thus, neither a statutory discovery rule nor the equitable discovery applies here.

Despite his failure to show that he did not know nor should have reasonably known the facts underlying the cause of action in time to comply with the statute of limitations, Manzanares nevertheless argues that the facts of this case present an exceptional circumstance sufficient to apply the discovery rule.  To determine whether to apply the equitable discovery rule, courts "apply a balancing test to weigh the hardship imposed on the claimant by the application of the statute of limitations against any prejudice to the defendant resulting from the passage of time."[25]

Applying this balancing test, the Court finds that the discovery rule should not be applied under these circumstances.  As the Court has repeatedly said, Manzanares became aware of Defendants' actions in early 2008 or, at the very latest, by July 2008.  Despite this knowledge, Manzanares waited nearly six years to bring his claims.  While the application of the statutes of limitation will impose a hardship on Manzanares, it is the same hardship that is imposed upon all

---

[24] *Berneau v. Martino*, 223 P.3d 1128, 1134–35 (Utah 2009).

[25] *Estate of Davis v. Davis*, 265 P.3d 813, 816 (Utah Ct. App. 2001) (citation and internal quotation marks omitted).

other litigants who fail to timely pursue their claims.  Further, if the Court were to allow Manzanares's claims to go forward, there would undoubtedly be prejudice to Defendants. Therefore, the Court will not apply the doctrine of equitable tolling.

Manzanares further argues that the statutes of limitation were tolled until after the Utah Supreme Court issued its decision.  Manzanares appears to argue that he could not have discovered the facts related to his causes of action until the Utah Supreme Court ruled in his favor.  The Court must reject this argument.  If the Court were to accept Manzanares's argument, statutes of limitation would become meaningless.  Under Manzanares's argument, the statute of limitations would be tolled until there was a judicial determination that a defendant's conduct was wrongful.  If this were the case, no statute of limitations would begin to run until after a determination on the merits of a particular claim was made.  Such a rule is untenable.

A similar argument was made in *Jensen v. Young*.[26]  In *Jensen*, the plaintiff hired an attorney to bring claims against a television station based on news reports the station had broadcast.  The attorney informed the plaintiff that he (the attorney) had missed the statute of limitations as to the plaintiff's defamation claims concerning two of three broadcasts, but the attorney downplayed the impact and insisted that the plaintiff could recover under a fraud claim. The plaintiff's defamation claims as to the first and second broadcasts were dismissed by the court as being barred by the statute of limitations.

The plaintiff later brought a malpractice action against his attorney for missing the deadline on his defamation claims.  The trial court dismissed the plaintiff's malpractice claims based on the statute of limitations and the plaintiff appealed.

---

[26] 245 P.3d 731 (Utah 2010).

The Utah Supreme Court first noted that the plaintiff's malpractice claims arose on the dates that the statute of limitations for his defamation claims expired.  The plaintiff did not bring his malpractice claims within the limitations period.

The plaintiff argued that the district court erred in not applying the discovery rule to toll the statute of limitations, arguing that he could not have discovered his injury related to the malpractice action until an adverse ruling was entered in his underlying suit against the television station.  The Utah Supreme Court rejected this argument.  The court found that the plaintiff knew or should have known of his injuries when his attorney informed him that he missed the statute of limitations with regard to his defamation claims.  The plaintiff "received additional notice that he had been injured when the district court dismissed his defamation claims as being untimely."[27]  The Utah Supreme Court further found that the plaintiff "sustained actual damages before this court issued its opinion fully resolving his underlying case."[28]  "Because [the plaintiff] sustained both injury and damages when [the attorney] failed to timely file his defamation claims, the limitations period on [the plaintiff's] malpractice claims began to run at that point."[29]

The same is true here.  Manzanares suffered injuries and damages at the time of the adoption proceedings and the full extent of those injuries came to light, at the latest, during the trial on the adoption, which occurred in July 2008.  Manzanares cannot argue that his injuries and damages were not known until after the Utah Supreme Court issued its decision.  It is clear that his injuries and damages were known well before that date.

---

[27] *Id.* at 736–37.

[28] *Id.* at 738.

[29] *Id.*

Manzanares further argues that there is ongoing litigation concerning K.M. in Colorado and therefore his damages are not completely known.  However, the fact that Manzanares does not know the full extent of his damages does not toll the statutes of limitation.[30]  Based on the above, all of Manzanares's claims are barred by the applicable statutes of limitation and will be dismissed with prejudice.

B.     K.M.'S CLAIMS

The Court held a status conference on October 28, 2014, where it informed the parties that it intended to dismiss Plaintiff Manzanares's claims based on the statutes of limitation.[31] The Court also ordered Plaintiffs' counsel to submit a brief explaining how he wanted to proceed with K.M.'s claims in light of the dismissal of Manzanares's claims.  That brief was to be submitted by November 7, 2014, at 5:00 p.m.

Counsel did not comply with the Court's order.  Instead, several hours after it was initially due, counsel submitted a document requesting additional time to file a reply to the 56(d) Motion and requesting oral argument on that motion.  Counsel then stated that the Court should "[t]hereafter determine whether a further expression of intention on how to move forward with Plaintiff K.M.'s claims is required from the Court, and if so, set a deadline for such filing to be made."[32]  Counsel makes no further reference to how Plaintiffs wish to proceed with K.M.'s claims.

---

[30] *See Colosimo*, 156 P.3d at 813.

[31] The hearing was originally set for the Court to hear oral argument on Defendants' Motions to Dismiss.  However, the day before the hearing, Plaintiffs' counsel informed the Court that he was out of town and would not be able to attend the hearing.  To accommodate counsel, the Court allowed him to appear telephonically.

[32] Docket No. 38, at 2.

Pursuant to Federal Rule of Civil Procedure 41(b), a district court may dismiss an action without prejudice "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order."[33]  "[A] district court may, without abusing its discretion, enter such an order without attention to any particular procedures."[34]

Considering the facts of this case, the Court finds that dismissal of Plaintiff K.M.'s claims without prejudice is appropriate.  As set forth above, the Court provided Plaintiffs' counsel an opportunity to address how to proceed with the claims brought by K.M.  As is discussed in other filings, there are serious questions as to whether Plaintiff Manzanares can bring these claims on behalf of K.M.  In addition, it appears that Manzanares is in violation of the spirit, if not the letter, of the Colorado court's order concerning the allocation of decision-making authority between himself and the Byingtons.  At the hearing, the Court addressed some of these concerns and provided counsel an opportunity to respond.  However, Plaintiffs have chosen not to provide anything additional for the Court's consideration.  Instead, Plaintiffs seek to further delay this case based upon their meritless Rule 56(b) Motion.  The Court cannot abide such gamesmanship.  Therefore, the Court will dismiss K.M.'s claims without prejudice based on her failure to prosecute and her failure to comply with the Court's order.

---

[33] Fed. R. Civ. P. 41(b); *see also Olsen v. Mapes*, 333 F.3d 1199, 1204 & n.3 (10th Cir. 2003).

[34] *Nasious v. Two Unknown B.I.C.E Agents*, 492 F.3d 1158, 1162 (10th Cir. 2007).  By contrast, a court's decision to dismiss a case with prejudice is a harsher remedy that requires the consideration of certain criteria. *Id.  See also AdvantageEdge Bus. Grp. v. Thomas E. Mestmaker & Assocs., Inc.*, 552 F.3d 1233, 1236 (10th Cir. 2009) (stating that where "the district court dismissed AdvantEdge's case without prejudice, . . . it was not required to consider the criteria applicable to a dismissal with prejudice").

V.  CONCLUSION

It is therefore

ORDERED that Plaintiffs' Rule 56(d) Motion (Docket No. 33) is DENIED.  It is further

ORDERED that Defendants' Motion to Dismiss and the Joinders therein (Docket No. 13, 14, 15, and 16) are GRANTED.  Manzanares's claims are dismissed with prejudice.  K.M.'s claims are dismissed without prejudice.

The Clerk of the Court is directed to close this case forthwith.

DATED this 12th day of November, 2014.

BY THE COURT:

Ted Stewart
United States District Judge